2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBA MARROQUIN DE PORTILLO, individually and as successor in interest to her deceased son, Lester Daniel Marroquin,<br><br>   Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; LA CRESHEIA LEE; SCOTT ROLLER; OMAR ORTEGA; IVA NANUSEVIC; MICHAEL CAMPOS; JOSEPH GIESEMAN; ADRIEN CARRILLO; BENJAMIN NAZERIAN; and DOES 9–20, inclusive,<br><br>   Defendants. | Case No.: 3:23-cv-00978-WQH-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

Before the Court is Plaintiff Alba Marroquin De Portillo's ("Plaintiff") Motion to Compel Production of Documents from Defendant County of San Diego (the "County"). Doc. No. 24 ("Motion"). The County timely opposed the Motion. Doc. No. 26 ("Opposition"). The County also lodged the documents at issue for the Court's *in camera* review. *See* Doc. Nos. 22, 25. Following the Court's in camera review, and for the reasons discussed below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

1

# I. BACKGROUND

## A. Underlying Action

As the successor in interest to decedent Lester Daniel Marroquin ("Decedent"), Plaintiff brings this civil rights suit against the County, seven County employees, and other unknown individuals. *See* Doc. No. 32 ("Complaint"). Decedent, Plaintiff's son, died while in custody at the San Diego County Central Jail on May 30, 2021 ("Incident"). *Id.* Plaintiff alleges that Decedent died from acute water intoxication after uncontrollably drinking water from his cell toilet. *Id.* at ¶¶ 41–42. Plaintiff claims the County knew Decedent "was suffering from psychosis and was actively engaged in self-harming and suicidal behaviors" and failed to ensure "he did not have access to the means to harm himself." *Id.* at ¶ 77. Plaintiff further alleges that transferring Decedent from a safety cell without running water to a cell with running water amounted to deliberate indifference and reckless disregard of Decedent's health, safety, and welfare. *Id.* at ¶¶ 76–79. The County admits that Decedent's cell had running water and a toilet but otherwise denies liability. Doc. No. 37 at 10–11.

## B. Documents at Issue

### 1. Report by Critical Incident Review Board

Following the Incident, the County convened a Critical Incident Review Board ("CIRB"). A CIRB is an organized body of investigators who review in-custody deaths, among other critical incidents, and report their findings. Per the Sheriff's Department Policy and Procedure Manual ("Sheriff's Manual"), the "purpose" of the CIRB is to "consult with department legal counsel when an incident occurs which may give rise to litigation," with a "focus" on assessing "the department's civil exposure because of a given incident." Doc. No. 24-1 at 59.[1] The CIRB reviews the relevant incident from "multiple perspectives, including training, tactics, policies, and procedures with the goal of identifying problem areas and recommending remedial actions so that potential liability

---

[1] Page numbers for docketed materials refer to those imprinted by the Court's electronic case filing system.

can be avoided in the future." *Id.* It consists of three voting members (*i.e.*, commanders from law enforcement, court services, and detention services) and two non-voting members (*i.e.*, director of legal affairs and commander from human resources). *Id.*

The CIRB convenes both as a preliminary CIRB within 30 days of the relevant incident for a preliminary assessment, followed by a final CIRB where investigators present facts and circumstances surrounding the critical incident and board members have an opportunity to ask questions. *Id.* at 60. The Director of Legal Affairs attends both sessions. *Id.* at 59–60. The Division of Inspectional Services ("DIS") ensures materials related to an incident are available for the CIRB to review, presents basic facts of the incident to the preliminary CIRB, and coordinates follow-up investigations as necessary. *Id.* at 59–60, 72. DIS is considered a CIRB "facilitator" and does not separately investigate. *Id.* at 71, 74.

In the case of an in-custody death, the Sheriff's Homicide Unit investigates the incident and conducts a more thorough presentation at the final CIRB. *Id.* at 71. At both CIRB meetings, the board members discuss potential patterns in incidents, liability risk for that particular incident, possible policy changes, and any relevant developments in the law. Doc. No. 26-1 at 129–130. After hearing from necessary parties, the CIRB's voting members vote as to whether policy violations occurred. Doc. Nos. 24-1 at 61; 26-1 at 121. If a majority of the three voting Commanders determine a policy violation may have occurred, they refer the case to Internal Affairs for further investigation. Doc. Nos. 24-1 at 61; 26-1 at 121. Following any investigation by Internal Affairs, the case is "forwarded to the command for review consistent with the Department's policies and procedures." Doc. No. 26-1 at 121. The CIRB also evaluates training, and if it identifies significant training issues, the CIRB will direct those issues to the Training Lieutenant, who subsequently prepares a report outlining actions taken. *Id*. If the CIRB identifies any "policy issues," it directs those concerns to the DIS Standards and Compliance Manager, who then prepares proposed policy recommendations and presents them for approval to SOPC within 30 days of the CIRB. *Id.*

After both the preliminary and final CIRB presentations, the DIS Lieutenant prepares confidential and public reports. Doc. No. 24-1 at 61. The confidential report summarizes the CIRB's actions and conclusions and contains specific findings regarding any policy violations, any training or policy issues, and actions taken by the Sheriff's Department. *Id.* A copy of the confidential report and other related reports are filed in the Legal Affairs Section, Office of the Sheriff. *Id.* The public report details the facts reviewed by the CIRB at the CIRB meeting; it is posted on the Sheriff's Department website. *Id.*

Here, the County prepared a confidential CIRB report related to the Incident, dated May 10, 2022. Doc. No. 26-1 at 95. Based on the record, it is unclear whether the County convened a preliminary CIRB following the Incident or if a confidential report followed the preliminary CIRB. However, the record and documents lodged with the Court confirm that CIRB members reviewed internal memoranda and a power point presentation related to the Incident. *Id.* at 96–97.

### 2. Internal Affairs Documents

According to the Sheriff's Manual, the Internal Affairs ("IA") Unit handles all complaints against County Sheriff employees. Doc. No. 24-1 at 51. This includes investigating, generating an investigation report, proposing appropriate disciplinary action, and recording the disposition of any investigation. *Id.* at 51–52. The IA Unit is also responsible for notifying an employee being investigated of any relevant investigation updates. *Id.* at 52–53. Documents lodged with the Court confirm that IA investigation reports, memoranda, internal communications, and proposed disciplinary actions exist relating to the Incident and certain named Defendants. Doc. No. 26-1 at 102–113.

### C. The Parties' Discovery Dispute

#### 1. Plaintiff's Request for Production of CIRB and IA Documents

On December 15, 2023, pursuant to Federal Rule of Civil Procedure 34, Plaintiff served the County with a request for production of:

> Any and all incident reports, post-incident reports, investigative reports, and administrative reports concerning the INCIDENT, including the homicide

> binder," internal-affairs reports and conclusions, and critical incident review board reports and conclusions for the INCIDENT.

Motion at 5; *see also* Doc. No. 24-1 at 7. In response, the County objected, in part, on "the grounds that [the request] seeks information in violation of the attorney client privilege, attorney work product doctrine, [and] litigation privilege[.]" Doc. No. 24-1 at 21. The County also produced a privilege log, identifying thirty-five (35) responsive documents being withheld based on "[a]ttorney-client privilege and work-product doctrine, and [being] prepared in anticipation of litigation" ("Privilege Log"). *Id.* at 27–45. The documents withheld included CIRB and IA documents that the County generated in response to the Incident. The County lodged the CIRB and IA documents for the Court's *in camera* review. *See* Doc. No. 25. These documents correspond to the documents identified in the Privilege Log. Doc. No. 24-1 at 27–45.

The CIRB documents consist of the following: (1) a six-page report, dated May 10, 2022, summarizing the CIRB proceedings related to the Incident ("Marroquin CIRB Report"); (2) attachments that include a meeting roster, inter-departmental correspondence, and Multi-Disciplinary Group ("MDG") meeting agendas ("Marroquin CIRB Attachments"); and (3) a PowerPoint presentation used during the CIRB meeting ("Marroquin CIRB Presentation") (collectively "CIRB Documents").[2] The Marroquin CIRB Report is addressed to "Robert Faigin, Chief Legal Advisor, Office of the Sheriff," from "Daniel Dennis, Sergeant, Division of Inspectional Services," via "Chain of Command." Doc. No. 24-1 at 27. The IA documents total 143 pages, with and without proposed redactions. The IA documents include an internal investigation report, dated January 7, 2022, internal communications and memoranda related to the investigation, and several internal records related to the Incident (collectively the "IA Documents").[3] Plaintiff seeks production of the CIRB and IA Documents. Motion at 1.

---

[2]  The Court conducted an *in camera* review of the CIRB Documents.
[3]  The Court conducted an *in camera* review of the IA Documents.

**2. New Statutory Authority**

On July 9, 2024, Plaintiff filed a "Notice of New Authority in Support of Motion to Compel." Doc. No. 45. Therein, Plaintiff states that California Penal Code § 832.10, effective July 1, 2024, is relevant to the issues raised in the Motion. *Id.* Specifically, Section 832.10 provides that records related to an investigation of an in-custody death shall "not be made confidential and shall be made available for public inspection[.]" *Id.*; *see also* Cal. Penal Code §832.10(b). In response, the County contends that Section 832.10 is not relevant to the Motion, in part because it already agreed to produce IA documents. Doc. No. 50 at 5. The County further argues that Section 832.10 does not apply to the CIRB Documents as Plaintiff suggests, nor does it prevent the County from claiming privilege over CIRB Documents. *Id.* at 4–5. The County requests that the Court consider the statute's "full and complete" language. *See id.* at 8–11.

## II. LEGAL STANDARD

The Court applies federal law and civil rules in analyzing the County's privilege objections. *United States v. Zolin*, 491 U.S. 554, 562 (1989). "Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984); Fed. R. Civ. P. 26(b)(1).

### A. Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (1992) (internal citation omitted); *see also In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2022) ("the attorney-client privilege extends only to communications made for the purpose of facilitating the rendition of professional legal services"). "Thus, the client must consult the lawyer for the purpose of obtaining legal assistance and not predominantly for another purpose." *In re Grand Jury*, 23 F.4th at 1092 (quoting Restatement (Third) of the Law Governing Lawyers § 72 cmt. c (Am. L. Inst. 2000)). "Where the communication was made for dual-purposes, courts must determine 'whether the primary purpose of the communication is to give or receive legal advice, as opposed to business . . . advice.'" *Greer v. County of San Diego,* 634 F. Supp. 3d 911, 917 (S.D. Cal. 2022) (citing *In re Grand Jury*, 23 F.4th at 1091); *see also In re Grand Jury*, 23 F.4th at 1091 (holding that "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications").

"The attorney-client privilege has eight elements: (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Christensen*, 828 F.3d 763, 802 n.18 (9th Cir. 2016) (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). "The burden is on the party asserting the privilege to establish all the elements of the privilege." *Martin*, 278 F.3d at 999–1000.

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Martin*, 278 F.3d at 999 (citation omitted). As such, "[t]he scope of the privilege should be strictly confined within the narrowest possible limits." *Christensen*, 828 F.3d at 803 (internal quotations omitted). "An entire document or set of documents may be privileged when it contains privileged portions that are so inextricably intertwined

with the rest of the text that they cannot be separated." *Id.* "In contrast, if the nonprivileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure." *Id.*

### B. Work Product Doctrine

"The work-product doctrine is a qualified privilege that protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case, and protects both material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* (citation omitted). The doctrine "upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies—without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them." *In re Grand Jury*, 23 F.4th at 1093; *see also* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . .").

"In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011) (citation omitted). "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* (citation omitted). "The party asserting work product protection has the burden to demonstrate it applies to the information in question." *Greer*, 634 F. Supp. 3d at 918 (citation omitted).

## III. DISCUSSION

### A. CIRB Documents: Attorney-Client Privilege

For the reasons discussed below, the CIRB Documents are not protected from disclosure by the attorney-client privilege.

#### 1. Marroquin CIRB Report

At the outset, the Court notes that the Marroquin CIRB Report is addressed to Mr. Faigin, Defendant's Chief Legal Advisor, and marked "Privileged Attorney-Client." Involving an attorney or marking a document "Privileged Attorney-Client," however, does not automatically create attorney-client privilege and immunize a document from disclosure. *Greer*, 634 F. Supp. 3d at 920 ("Courts, however, have rejected attempts to immunize documents from disclosure by simply involving an attorney in the investigation.") (citing *United States v. ISS Marine Srvs., Inc.*, 905 F. Supp. 2d 121, 129–130 (D.D.C. 2012)). Moreover, review of the Marroquin CIRB Report, combined with an understanding of the role and purpose of the CIRB, confirms that its primary purpose is not to provide legal advice.

First, as described in the Sheriff's Manual, CIRB proceedings involve primarily non-legal advisors and attendees. Among that non-legal personnel are Commanders from Law Enforcement, Detention Services, and Human Resources as well as representatives from the Facility or Unit Commander of the employee's chain of command, Weapons Training Unit, In-Service Training Unit, and Detention Training Unit. *See* Doc. Nos. 24-1 at 60; 26-1 at 119. And consistent with the Sheriff's Manual, the roster for the CIRB at issue here confirms that no less than 28 individuals attended the CIRB proceeding, only three of which are identified as "Legal" personnel. CSD Priv. Log 0009.

Second, as outlined in the Sheriff's Manual, the CIRB has a variety of non-legal purposes, including (i) determining whether policy violations occurred; (ii) identifying any policies of concern; (iii) identifying opportunities for policy change or training; and (iv) making recommendations as to training and remedial actions. *See* Doc. Nos. 24-1 at 60–61; 26-1 at 119–121. And, critically, it is the CIRB's *voting members* that decide

whether policy violations occurred and thus whether to refer a case to Internal Affairs. As a non-voting member, the Director of Legal Affairs does not participate in that decision and thus plays no role in whether a case is forwarded to Internal Affairs for investigation. Doc. No. 26-1 at 119, 121. As such, California's State Auditor recently concluded that CIRB's "ultimate goal is identifying problem areas and recommending remedial actions—such as posting a training bulletin or changing a policy—so that potential liability can be avoided in the future." Doc. No. 24-1 at 80. Here, regarding the Incident, the CIRB did make recommendations regarding follow-on investigation by Internal Affairs and research as to certain policies/procedures. *See* CSD Priv Log 0005.

Third, confidential CIRB reports, which are not prepared by a lawyer per the Sheriff's Manual, memorialize in a summary format the information presented to the CIRB and discussions by CIRB attendees, along with the CIRB's recommendations, findings, and actions. Because they are not prepared by legal personnel, the CIRB reports do not, by definition, include any legal analysis or legal advice directly from a lawyer or other legal personnel.

Finally, to the extent the Marroquin CIRB Report can be characterized as having a dual purpose, the Court's *in camera* review confirms that its primary purpose *is not* to give or solicit legal advice. Instead, it is a recitation of facts and information presented to and/or discussed by the CIRB. Specifically, the Marroquin CIRB Report describes the Incident, summarizes the information presented and shared with the CIRB, recites the discussion that occurred at the CIRB proceeding, and lists the CIRB's recommendations. It makes no reference to liability, litigation, or any legal claims, potential or otherwise, nor does it document any legal advice sought from or conveyed by Mr. Faigin or any other legal advisor.

Based on the foregoing, the Court finds that the primary purpose of the Marroquin CIRB Report is not to render or solicit legal advice, but rather investigative and remedial in nature. Therefore, it is not protected from disclosure by the attorney-client privilege.

This conclusion is consistent with several decisions issued by this Court. Applying the "primary purpose test" articulated in *In re Grand Jury*, 23 F.4th 1088, this Court has repeatedly held that CIRB reports are not protected by the attorney-client privilege. *See, e.g.*, *Greer*, 634 F. Supp. 3d at 919–21; *Morton v. County of San Diego*, No. 21-cv-01428-MMA-DDL, 2023 U.S. Dist. LEXIS 106737, at *6 (S.D. Cal. June 27, 2023); *Estate of Serna v. County of San Diego*, No. 20-cv-02096-LAB-DDL, 2023 U.S. Dist. LEXIS 205089, at *17–18 (S.D. Cal. Aug. 30, 2023); and *Dunsmore v. County of San Diego*, No. 20-cv-00406-AJB-DDL, 2023 U.S. Dist. LEXIS 222118, at *16–17 (S.D. Cal. Dec. 13, 2023). In those prior cases, the Court similarly found that the attorney-client privilege did not protect CIRB documents largely because "the CIRB's primary purpose is investigative and remedial[.]" *Greer*, 634 F. Supp. 3d at 921. Notably, in those prior decisions, the Court evaluated evidence similar to that cited and submitted as part of the instant Motion. *See, e.g.*, *Greer,* 634 F. Supp. 3d at 920 (citing statements by Mr. Faigin, the "primary architect of the CIRB policy and procedure"). Taken together, this evidence consistently indicates that the primary purpose of CIRB documents is investigative and remedial.

Still, the County attempts to distinguish the Marroquin CIRB Report from the CIRB reports at issue in those prior cases based on the timing of the Marroquin CIRB Report. Opposition at 2. Specifically, the County emphasizes that the Marroquin CIRB Report was prepared *after* the County rejected Plaintiff's administrative tort claim for damages. *Id.* at 2–3, 6. Coupled with Plaintiff's expressed intent to pursue litigation against the County, the County contends this sequence of events presents a meaningful distinction from the above-referenced cases because the Marroquin CIRB Report "was prepared with the knowledge that Plaintiff was going to initiate litigation that contained a specific and distinct cause of action." Opposition at 6. As such, the County concludes that it is a "protected attorney-client communication" and points to questions raised by the Sheriff's Legal Counsel during the Marroquin CIRB meeting to further support this conclusion. *Id*. at 7.

The Court is not persuaded that the timing of the Marroquin CIRB Report makes it materially different from those CIRB reports considered in prior decisions. The Sheriff's

Manual *requires* that the CIRB convene to review in-custody deaths. Doc. No. 26-1 at 120. It also *requires* that the CIRB: (i) determine, by vote, whether any policy violations occurred in connection with such critical incidents; (ii) make training recommendations as appropriate; and (iii) direct policy concerns to certain parties. *Id.* at 121. Hence, irrespective of any administrative tort claim or threatened litigation, the CIRB would have reviewed and investigated the Incident and evaluated policies and training, resulting in the preparation of the requisite CIRB report. Hence, it cannot be said that the Marroquin CIRB Report reflects communications necessary to obtain informed legal advice that might not have occurred absent the privilege. *In re Grand Jury*, 23 F.4th at 1092 ("As the Supreme Court has recognized, the attorney-client privilege protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.") (internal quotations omitted).

Further, although the County makes much of Plaintiff's impending *Monell* and wrongful death claims, the Marroquin CIRB Report makes no reference to Plaintiff, an administrative tort claim, a *Monell* claim, the elements of such a claim, or even any anticipated litigation. In short, Plaintiff's potential claims did not change the primary purpose of the Marroquin CIRB Report given that such a report would exist even in the absence of threatened litigation.

Lastly, in arguing that the Marroquin CIRB Report is protected because it "was prepared with the knowledge that Plaintiff was going to initiate litigation," *see* Opposition at 6, the County advances an argument similar to that rejected in *In re Grand Jury*. In adopting "the primary purpose test," the Ninth Circuit expressly rejected a test borrowed from the work-product doctrine, namely that the attorney-client privilege applies to documents created "because of" anticipated litigation. *In re Grand Jury*, 23 F.4th at 1092–93 ("It is a broader test than the 'primary purpose' test because it looks only at causal connection, and not a 'primary' reason."). In refusing to adopt the "because of" test in the context of the attorney-client privilege, the Ninth Circuit expressed concern that such a test

would harm "our adversarial system if parties try to withhold key documents as privileged by claiming that they were created 'because of' litigation concerns." *Id.* at 1093.

Here, the County invites the Court to apply a variation of the "because of" test by suggesting that the application of the attorney-client privilege hinges on the County's "knowledge" of Plaintiff's threatened litigation. *See* Opposition at 6 ("The Marroquin CIRB Report is protected attorney-client communication because it was prepared with the knowledge that Plaintiff was going to initiate litigation that contained a specific and distinct cause of action."); 8 ("Since the Marroquin CIRB had specific knowledge as to Plaintiff's impending cause of action, the primary purpose of the Marroquin CIRB was to relay and receive legal advice and legal analysis, as opposed to any other form of advice."). The Court declines to adopt such a test because it is contrary to the principles laid out by the Ninth Circuit in *In re Grand Jury*.

Nevertheless, the Court acknowledges that the Marroquin CIRB Report reflects questions raised by Mr. Faigin during the January 2022 CIRB meeting. Mr. Faigin's questions are consistent with the investigative and remedial character of the CIRB proceedings. However, because Mr. Faigin was present at the CIRB in his capacity as the Chief Legal Advisor, the Court cannot ignore the County's representations that his questions were made in the context of trying to formulate and provide legal advice. Opposition at 7; *see also* Doc. No. 26-1 at 129–130 (84:5-85:12); *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996) ("fact-finding which pertains to legal advice counts as professional legal services"). Accordingly, as outlined below, the Court finds that those portions of the Marroquin CIRB Report reflecting Mr. Faigin's questions and the responses thereto may be redacted as an attorney-client communication.

2. **Marroquin CIRB Attachments**

The Court further finds that the Marroquin CIRB Attachments, none of which are marked "Privileged," are investigative and remedial in nature, and nothing therein suggests that their primary purpose pertains to legal advice. While the County does not separately address the Marroquin CIRB Attachments, the County does identify them in the privilege

log as part of the "CIRB memorandum and its contents." Doc. No. 26-1 at 99–100. While attached to the Marroquin CIRB Report, the Marroquin CIRB Attachments are distinct documents with little to no indication of a legal purpose. Of the 28 attendees on the CIRB roster, only three are designated as "Legal." Moreover, the inter-departmental correspondence is addressed to the CIRB Chair, authored by a non-legal supervisor, and solely discusses correctional facility policy. The MDG meeting agendas similarly do not include legal personnel and disclose only facts. Accordingly, the Marroquin CIRB Attachments are not protected from disclosure under attorney-client privilege.

### 3. Marroquin CIRB Presentation

Finally, for the same reasons the Marroquin CIRB Report is not protected from disclosure by the attorney-client privilege, the Court finds that the Marroquin CIRB Presentation is not a protected attorney-client communication as the primary purpose is not to provide or solicit legal advice.

The County argues that the Presentation was prepared "in the course of the attorney-client relationship," incorporated information specifically requested by counsel, and was drafted by an employee "clearly acting as counsel's agent." Opposition at 8–9. However, review of the Marroquin CIRB Presentation shows it is not marked as "Privileged" and, other than a bare assertion by County counsel, there is no evidence confirming or demonstrating that it was prepared at the request of or with direction from the Sheriff's Legal Counsel. Moreover, like the Marroquin CIRB Report, the Marroquin CIRB Presentation makes no mention of liability, litigation, legal advice, or requests from legal counsel. Instead, the Marroquin CIRB Presentation summarizes and relays facts surrounding the Incident. It describes events leading up to and following the Incident, individuals involved, and statements by those individuals. These underlying facts are not protected by the attorney-client privilege. *Upjohn Co.*, 449 U.S. at 395 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . ."). And, as the County acknowledges, the Marroquin CIRB Presentation "was prepared for the purpose of presenting information

specific to the Incident to the Marroquin CIRB," which consisted primarily of non-legal personnel. Opposition at 8.

Moreover, the Sheriff's Manual contradicts the contention that the Marroquin CIRB Presentation was created "not in the ordinary course of business." Opposition at 9 (quoting *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 509 (S.D. Cal. 2003)). The Sheriff's Manual *mandates* that a Final CIRB presentation occur in every in-custody death, with the type of information reflected in the Marroquin CIRB Presentation. *See* Doc. No. 26-1 at 120. While an in-custody death should not be described as "ordinary," a final CIRB presentation like the one prepared for the Incident is ordinarily prepared and presented at CIRB meetings. Doc. No. 24-1 at 60, 75–74.

In sum, the Court finds the Marroquin CIRB Presentation is not protected from disclosure by the attorney-client privilege.

**B. CIRB Documents: Work Product Doctrine**

With the exceptions noted below, the CIRB Documents are also not protected from disclosure by the work product doctrine because they were not prepared primarily to aid in pending or anticipated litigation. *Kelly v. San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987) ("The work product doctrine does not apply to information collected or communications made in the normal course of business. It applies only to material generated primarily for use in litigation, material that would not have been generated but for the pendency or imminence of litigation.").

**1. Marroquin CIRB Report**

As noted above, the Sheriff Department's procedures *required* that the CIRB convene to review the Incident because it involved an in-custody death. The resulting Marroquin CIRB Report is the product of that required CIRB proceeding, and its preparation is similarly required and occurs at the conclusion of all CIRB meetings. As such, the Marroquin CIRB Report was prepared in the regular course of business and not in anticipation of litigation. Therefore, the work product doctrine does not apply. *See, e.g.*, *Miller v. Pancucci*, 141 F.R.D. 292, 303 (C.D. Cal. 1992) (finding that police department's

internal affairs investigations were not work-product protected because they are performed in the regular course of business); *Kelly*, 114 F.R.D. at 659 ("Since police departments are under an affirmative *duty*, in the normal course of serving their public function, to generate the kind of information at issue here [i.e., internal investigation reports], the policies that inspire the work product doctrine are wholly inapplicable.") (emphasis in original); *Griffith v. Davis*, 161 F.R.D. 687, 699 (C.D. Cal. 1995) ("Because the memorandum would have been generated whether or not litigation was pending, it does not qualify as attorney work product.").

The County asserts that work protection applies because the Marroquin CIRB Report "would not have been prepared in the same manner and or [sic] contained the same information, but for the specific knowledge of Plaintiff's impending claim and causes of action." Opposition at 10. The County, however, fails to explain how this report differs in any material respect from every other CIRB report generated at the conclusion of a CIRB proceeding. Nor does the County identify what kind of "information" is included in the Marroquin CIRB Report that does not ordinarily appear in other CIRB reports. Further, based on an *in camera* review, the Court cannot conclude that the entire report constitutes attorney work product, particularly when it was not prepared by an attorney and makes no reference to Plaintiff, liability, or any impending litigation or claims.

Nevertheless, to the extent the Marroquin CIRB Report memorializes "specific questions and responses" prompted by Mr. Faigin, the Court concludes that this information is protected under the work product doctrine. Mr. Faigin attends CIRB meetings in his capacity as the Sheriff's Chief Legal Advisor. At the time of the January 2022 CIRB meeting, Mr. Faigin was presumably aware of the prospect of a suit involving a *Monell* claim. Further, Mr. Faigin's questions reflect his mental processes and potentially his thinking concerning impending litigation. As such, out of an abundance of caution, the Court finds that those portions of the Marroquin CIRB Report memorializing Mr. Faigin's questions and the responses thereto are protected attorney work product, even though the entirety of the document was not prepared in anticipation of litigation. Therefore,

consistent with the Court's order below, the paragraphs detailing Mr. Faigin's questions and the responses thereto may be redacted.

### 2. Marroquin CIRB Presentation and Attachments

The County argues that the Marroquin CIRB Presentation "contains specific information that is germane to the elements that Plaintiff must prove for a successful *Monell* claim" and, but for Plaintiff's impending claims, the information therein "would not have otherwise been prepared." *Id.* at 10. Again, the Court is not persuaded.

First, the County makes these sweeping assertions without describing in even general terms what "information" would not have otherwise been prepared. Second, there is no indication that legal counsel helped prepare the Presentation or how counsel otherwise influenced its contents. Third, to the extent the Marroquin CIRB Presentation briefly discusses policy issues and/or remedial actions, the Court sees no express connection to any anticipated litigation given that the CIRB is required to consider such matters. *See* Doc. Nos. 24-1 at 60–61; 26-1 at 119–121. The same is true for the Marroquin CIRB Attachments, which the County does not separately address. *See* Doc. Nos. 24-1 at 60–61; 26-1 at 119–121. Simply put, nothing in the Marroquin CIRB Presentation or Attachments appear to capture the mental process of an attorney or have been prepared in anticipation litigation. Thus, these documents are not protected from disclosure under the work product doctrine.

### C. IA Documents

Lastly, the County agrees to produce the Marroquin IA Documents under the Protective Order, with "specific information, such as personal cell phone numbers, home addresses, personnel information," and information that does not pertain to the Incident redacted. Opposition at 11. Based on an *in camera* review of the County's proposed redactions, the Court finds such redactions properly redact limited, sensitive, and/or irrelevant information. Because Defendant has agreed to produce the IA Documents that Plaintiff seeks, the Court does not address the County's relevant privilege claims in the CSD Privilege Log.

D.   **California Penal Code § 832.10**

Because the Court is ordering the disclosure of the CIRB and IA Documents, the Court declines to address whether California Penal Code § 832.10 also requires or otherwise governs their disclosure in this action. *See Simeonov v. Ashcroft*, 371 F.3d 532, 538 (9th Cir. 2004) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Playup, Inc. v. Mintas*, No. 2:21-cv-02129-GMN-NJK, 2024 U.S. Dist. LEXIS 21370, at *4 (D. Nev. Feb. 6, 2024) ("Courts also have a general duty to avoid deciding unnecessary issues.").

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court **ORDERS** the following:

1. The County shall produce the Marroquin CIRB Documents, bates-stamped **CSD Priv Log 0001–0035**, with the following information redacted:

   - The third, fourth, and fifth paragraphs under "Discussion" on **CSD Priv Log 0004**, reflecting questions asked by Robert Faigin and/or responses thereto;
   - The first two lines on **CSD Priv Log 0005**, reflecting questions asked by Robert Faigin and/or responses thereto; and
   - The portion of the second full paragraph on **CSD Priv Log 0005**, reflecting questions asked by Robert Faigin and/or responses thereto.

2. Additionally, and consistent with the redactions proposed in the Marroquin IA Documents, Defendant may redact the following information from the CIRB Documents:

   - Non-Public Telephone Numbers
   - Non-Public Emails
   - Non-Public Mailing Addresses.

3. The County shall produce the Marroquin IA Documents, bates-stamped **CSD Priv Log 0036–0178**, with the proposed redactions lodged with the Court.

4. In accordance with the Protective Order, the County may designate the produced IA and CIRB Documents with the appropriate confidentiality designation.

**IT IS SO ORDERED**.

Dated: December 9, 2024

Honorable Valerie E. Torres
United States Magistrate Judge